# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**DONALD BASKIN, et al.**                                                                 **PLAINTIFFS**

**V.**                                                      **CIVIL ACTION NO.: 1:07CV58-SA-JAD**

**CITY OF HOUSTON, MISSISSIPPI**
**AND OFFICER LARRY MIMS**                                                               **DEFENDANTS**

## MEMORANDUM OPINION

Comes now before this Court, Defendants' Motion for Summary Judgment [40]. After reviewing the motion, responses, rules, and authorities, the Court makes the following findings:

### Factual and Procedural Background

On March 19, 2006, the Decedent, Jerome Baskin, allegedly committed armed robbery of a convenience store. Defendant Larry Mims, a police officer with the City of Houston Police Department, responded to the armed robbery. Law enforcement personnel from the City of Houston and neighboring municipalities looked for the Decedent at his mother's home after obtaining her consent to search the premises. The Decedent was not there, but his mother and twin brother agreed to call the authorities if he returned home.

Later that evening, the officers returned to the Decedent's mother's home. When the law enforcement officers knocked on the door, the Decedent fled from the officers by running through the house and jumping out of the window. Decedent's mother screamed for him not to run. A chase ensued, and the Decedent and law enforcement officers slipped several times due to the late evening/early morning wet conditions. At one point, the Decedent assumed a crouched position by some bushes where he fell after scaling several privacy fences. Despite being directed to stay down by Officer Mims and other law enforcement personnel, the Decedent stood up and charged Officer

Mims.

Decedent made a sudden cut to the left and got around Officer Mims. Officer Mims spun around to grab the Decedent. Officer Mims now was behind the Decedent. After a previous unsuccessful attempt to grab the Decedent with one hand, Officer Mims then tried to grab him with both hands. At this moment, Officer Mims' gun was in his right hand pointed towards the ground. Officer Mims never did get his hand on Decedent's shoulders because as he was raising his two hands, the gun discharged, fatally shooting the Decedent in the back of the head.

On December 27, 2007, Plaintiffs[1] filed this action against the City of Houston, Mississippi, and Officer Larry Mims pursuant to 42 U.S.C. § 1983 for the alleged unreasonable seizure based on excessive force of Jerome Baskin under the Fourth Amendment and denial of due process in violation of the Fourteenth Amendment. Furthermore, Plaintiffs seek damages against both Defendants for the common law tort of negligence.

Defendants have moved for summary judgment, alleging that there are no genuine issues of material fact as to Plaintiffs' Section 1983 claims. Defendants also contend they are protected by immunity on the state law claim of negligence.

## Standard of Review

When considering a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("the burden on the moving party may be discharged by 'showing'...that there is an absence of evidence to support the nonmoving party's case"). The burden

---

[1] This lawsuit is brought by the Decedent's heirs including his mother, father, three brothers, and minor child (through the mother of the minor child).

then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324, 106 S. Ct. 2548 (citing FED. R. CIV. P. 56(c), (e)). That burden is not discharged by "mere allegations or denials." FED. R. CIV. P. 56(e). All legitimate factual inferences must be made in favor of the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. 2548. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the nonmovant. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

**Discussion**

**I. 42 U.S.C. § 1983**

In order to state a claim under Section 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Id. at 49, 108 S. Ct. 2250. "It is firmly established that a defendant in a section 1983 suit acts under color of state law when he abuses the position given to him by the State." Id., 108 S. Ct. 2250 (citing Screws

3

v. United States, 325 U.S. 91, 111, 65 S. Ct. 1031, 89 L. Ed. 1495 (1945)).

In this case, there is no dispute that Defendants' actions, relating to Plaintiffs' Section 1983 claims, were performed under color of state law. Consequently, the Court will analyze Plaintiffs' claims according to the first element in establishing a claim under Section 1983, i.e., whether Plaintiffs state a claim of a "violation of a right secured by the Constitution and laws of the United States." West, 487 U.S. at 42, 108 S. Ct. 2250. Plaintiffs seek relief pursuant to 42 U.S.C. § 1983 for the alleged unreasonable seizure based on excessive force of Decedent Jerome Baskin under the Fourth Amendment and denial of due process in violation of the Fourteenth Amendment.

**A.   Fourth Amendment Excessive Force**

Plaintiffs claim that Officer Mims violated Decedent's Fourth Amendment right to be free from excessive force when Mims' weapon discharged during the course of the attempted seizure. Before addressing whether excessive force was used, the Court must determine whether a "seizure" occurred under the Fourth Amendment.

"[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). "It is clear . . . that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*." Browder v. County of Inyo, 489 U.S. 593, 596-97, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989) (emphasis in

original). Stated differently, "the Fourth Amendment addresses 'misuse of power,' not the accidental effects of otherwise lawful government conduct." Id. at 596, 109 S. Ct. 1378 (citation omitted). For Officer Mims' conduct to constitute a seizure he must have intended to shoot the Decedent for the purpose of terminating his freedom of movement.

Plaintiffs allege Officer Mims' actions were the result of negligence in failing to use reasonable care in the use of his firearm and in the use of excessive force. To prevail on Plaintiffs' theory the shooting violated Decedent's Fourth Amendment rights, Plaintiffs must produce evidence that the shooting was both intentional and unreasonable. Id. 596-97, 109 S. Ct. 1378. The testimony of the three officers present when the Decedent was killed is undisputed. The officers testified that Officer Mims had his weapon drawn and attempted to grab the Decedent by the shoulders with both hands when his weapon accidently discharged.

As a moving party who does not bear the burden of proof on the claim, Defendants have carried their burden to show Plaintiffs have no admissible evidence to support a reasonable inference that Officer Mims intentionally shot the Decedent as the means to effectuate the seizure, so that no disputed issue of material fact on that element remains to be decided.

Plaintiffs burden in opposing the Motion is to offer evidence from which a reasonable jury could find Officer Mims discharged his weapon intentionally shooting the Decedent. See Celotex Corp, 477 U.S. at 324, 106 S. Ct. 2548. To meet their burden, Plaintiffs needed to go beyond the pleadings, using affidavits or depositions, answers to interrogatories, and admissions on file to designate specific facts sufficient for a jury to make such findings.[2] FED. R. CIV. P. 56 (c). There

---

[2] Plaintiffs have failed to produce any summary judgment evidence, affidavits, depositions, or otherwise to substantiate their claim.

5

is no dispute the bullet from Officer Mims' gun struck the Decedent in the back of the head during the pursuit. However, even the Plaintiffs have been unwilling to say the shooting was intentional. Instead Plaintiffs entire claim is couched in terms of negligence and lack of reasonable care. Negligent or accidental conduct by police officers does not rise to the level of a constitutional violation. Browder, 489 U.S. at 596-97, 109 S. Ct. 1378 ( a seizure must be willful to be actionable under the Fourth Amendment). Moreover, the Mississippi Highway Patrol Bureau of Investigation conducted a separate investigation and also concluded that the shooting indeed was accidental.

Because Plaintiffs have presented no evidence which could support a finding by a reasonable trier of fact that Officer Mims violated the Decedent's Fourth Amendment rights on the grounds alleged, Defendants' Motion for Summary Judgment on the Fourth Amendment claim is granted.

**B.    Fourteenth Amendment Substantive Due Process**

A claim of abusive governmental conduct that implicates a specific constitutional right must be analyzed as a violation of that right, rather than as a violation of substantive due process. Graham, 490 U.S. at 395, 109 S. Ct. 1865. Here, because the Decedent was not seized, the Fourth Amendment does not provide an explicit textual source of constitutional protection, and therefore, Plaintiffs may properly claim a violation of substantive due process under the Fourteenth Amendment. Browder, 489 U.S. at 596, 109 S. Ct. 1378.

The Court now examines whether a reasonable jury could find from the evidence that Mims' shooting of the Decedent meets the "shock the conscience" standard for a substantive due process violation under the Fourteenth Amendment. County of Sacramento v. Lewis, 523 U.S. 833, 846, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) ("[F]or half a century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience.").

6

"[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." Id. at 847, 118 S. Ct. 1708. Negligence does not meet the "shock the conscience" standard; rather, "[i]t is, . . ., behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Id. at 849. Moreover, the parameters of what constitutes a violation of one's substantive due process rights is fluid and demands a case-by-case analysis of the facts. Id., 118 S. Ct. 1708 ("Deliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking.").

As a result, when officers are faced with dangerous situations in which split-second decisions must be made, the bar for demonstrating that certain behavior shocks the conscience is higher. Id. at 853, 118 S. Ct. 1708. Where unforeseen circumstances demand instant judgment – when officers pursue a fleeing armed robbery suspect, for example – even deliberate indifference does not shock the conscience since decisions made in such circumstances are not deliberate. Lewis, 523 U.S. at 851-53, 118 S. Ct. 1708. Where instant judgment is required, only deliberate actions intended to harm another shock the conscience. Id. at 836, 118 S. Ct. 1708.

As an initial matter, the Plaintiffs' have failed to even address the Fourteenth Amendment claim in their Response to Summary Judgment. Nevertheless, the important question before the Court is whether Officer Mims had a purpose to cause harm. As with the Fourth Amendment claim, Plaintiffs have designated no specific fact to support even a reasonable inference that Officer Mims

had a purpose to cause harm to the Decedent. Plaintiffs repeatedly characterize Officer Mims' conduct as negligent in nature rather than intentional. The only evidence before this Court is that Officer Mims weapon accidently discharged when he was pursuing the Decedent, the suspect in an armed robbery. Plaintiffs have presented no evidence which could support a finding by a reasonable trier of fact that Officer Mims violated the Decedent's Fourteenth Amendment rights on the grounds alleged. Accordingly, Defendants' Motion for Summary Judgment is granted as to the Fourteenth Amendment claim.

## II. State Law Claims

Plaintiffs asserted a supplemental state law claim for negligence. However, it is unclear to this Court whether the negligence claim is asserted solely against Officer Mims or both Officer Mims and the City of Houston, Mississippi. In the interest of justice, the Court will address the negligence claim as to both Officer Mims and the City of Houston, Mississippi.

## A. Officer Larry Mims, Individual Capacity

Defendants submit that Officer Mims is individually entitled to immunity as to the state law claim because he was acting within the course and scope of his employment at all times relevant to the Plaintiffs' claims against him. The Mississippi Tort Claims Act endows the individual defendant in this case with the advantage of a rebuttable presumption that any act or omission of his which takes place within the time and at the place of his employment is within the "course and scope of [his] employment." MISS. CODE ANN. § 11-46-5(3). Furthermore, the Mississippi Legislature set out a limited spectrum of instances which could be considered outside an employee's course and scope of employment. These include when the employee's conduct constitutes fraud, malice, libel, slander, defamation, or any criminal offense. Id. at § 11-46-7(2).

The Court is of the opinion that no genuine issue of material fact exists as to Officer Mims' conduct. Defendants have met their summary judgment burden and demonstrated by record evidence that no genuine issue of material fact exists as to whether Officer Mims' actions rise to the level of malice or any criminal offense[3]. Defendants introduced the record evidence demonstrating that Officer Mims' pursued the Decedent when he refused to stop as requested. The undisputed evidence further indicates that Decedent continued to resist the officers after they began closing in on him. The sworn testimony in the record indicates that the firearm which inflicted Decedent's injuries accidently discharged. In light of the evidence presented to the Court, Officer Mims' conduct did not constitute either malice or any criminal offense and there is no genuine issue of material fact as to this finding.

As such, the Court must conclude that Plaintiffs, when faced with a properly supported motion for summary judgment and in light of the rebuttable presumption of Mississippi Code Annotated Section 11-46-5(3), have failed to meet their burden of producing record evidence which would create a genuine issue of material fact as to whether Officer Mims' individually acted outside the course and scope of his employment. Under the MTCA, the Court is bound to dismiss the state law claims against him. <u>Id.</u> at § 11-46-7(2) (providing that "no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties."). For these reasons, the Plaintiffs' state law claims against Officer Mims in his individual capacity are dismissed.

---

[3] The Court is unable to read allegations of fraud, libel, slander, or defamation into the Plaintiffs' Complaint. As such, the Court's discussion reflects its analysis under the remaining two examples of conduct considered outside the course and scope of employment: that which constitutes malice or criminal offense.

**B. City of Houston, Mississippi/Officer Larry Mims, Official Capacity**

Claims against Officer Mims in his official capacity are actually claims against the City of Houston. Womble v. Singing River Hosp., 618 So. 2d 1252, 1261-62 (Miss. 1993) (noting suiting against agent in official capacity is tantamount to suit against entity itself and same immunities apply).

Defendants contend that the City is entitled to a grant of immunity as to the Plaintiffs' state law claims against it and those claims should be dismissed. Although the MTCA specifically waives any immunity for claims arising under tort law,[4] exemptions from that waiver of immunity exist. MISS. CODE ANN. § 11-46-9. Thus, if the Plaintiffs' claims fit within one of the specified exemptions, the City is entitled to immunity from liability based on those claims.

Mississippi Code Annotated Section 11-46-9(c) exempts from liability a governmental entity and its employees acting within the course and scope of their employment or duties for any claim

> [a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.

Id. at § 11-46-9(c). With the application of this subsection, the Court is of the opinion that Plaintiffs' state law claims against the City must be dismissed. Plaintiffs' claims surround an incident relating to the performance and execution of Officer Mims' duties as a police officer. Therefore, any claims which may be read to encompass a cause of action under state law must be dismissed.

Furthermore, the City also contends it is exempt from liability because the Decedent was

---

[4] Mississippi Code Annotated Section 11-46-5 provides: "[T]he immunity of the state and its political subdivisions from claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the scope of their employment is hereby waived." Miss. Code Ann. § 11-46-5(1).

engaged in a criminal activity at the time he was shot and therefore immunity attaches. In support of its contention, the City provided deposition testimony of the three officers involved in the Decedent's pursuit. This sworn testimony reflects that the Decedent refused to stop when so requested by the authorities. Plaintiffs failed to offer any record evidence disputing the Defendants' proof that the Decedent was engaged in criminal activity when he was killed.

The Court is of the opinion that Defendants have demonstrated the absence of any genuine issue of material fact as to whether the Decedent was engaged in criminal activity when he was killed. Resisting a lawful arrest is most definitely a criminal act under Mississippi law. MISS. CODE ANN. § 97-9-73. Furthermore, the only record evidence before the Court indicates that Officer Mims was in lawful pursuit of Decedent. Thus, Plaintiffs failed to rebut the Defendants' proof relating to Decedent's activities at the time of his death. Because there is no genuine issue of material fact as to whether Decedent was engaged in a criminal activity at the time he was killed, the City is entitled to an award of immunity as set forth in Section 11-46-9(1)(c) as to Plaintiffs' claims against Officer Mims in his official capacity.

## Conclusion

Based on the foregoing reasons, Defendants have demonstrated that they are entitled to judgment as a matter of law on the Fourth and Fourteenth Amendment claims and state law negligence claim because there are no genuine issues as to any material fact. As such, the Court concludes that Defendants' Motion for Summary Judgment [40] is meritorious and is granted. A separate order in accordance with this opinion shall issue this day.

SO ORDERED this the 16th day of October 2008.

                                                   **/s/ Sharion Aycock**
                                                  **U. S. DISTRICT COURT JUDGE**